**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

JEREMY WAYNE PARRIS

       Plaintiff,

       v.                            Case No. 2:17-cv-156-JVB-PRC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

       Defendant.

**OPINION AND ORDER**

Plaintiff Jeremy Wayne Parris seeks judicial review of the Social Security

Commissioner's decision denying her disability benefits, and asks this Court to remand the case.

For the reasons below, this Court remands the ALJ's decision.

**A.     Overview of the Case**

Plaintiff alleges that he became disabled on June 1, 2013. (R. at 207.) His date last

insured ("DLI") is December 31, 2014. (R. at 210.) Plaintiff most recently worked as a

foreclosed-home estimator, but has not worked since 2010. (R. at 223.) The Administrative Law

Judge ("ALJ") found that Plaintiff suffered from severe physical impairments. (R. at 22.)

However, the ALJ concluded that he could perform other jobs that existed in significant

numbers. (R. at 29.) Therefore, the ALJ denied him benefits. (R. at 30.) This decision became

final when the Appeals Council denied Plaintiff's request for review. (R. at 1.) Plaintiff

previously applied for disability benefits in 2010, but a different ALJ denied him benefits. (R. at

95–109.) The current ALJ declined to reopen that decision. (R. at 20.)

**B.      Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C.

§ 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from

evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the

ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*,

826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal

standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d

345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as

adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

**C.      Disability Standard**

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits

under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a
> severe impairment; (3) whether the claimant's impairment is one that the
> Commissioner considers conclusively disabling; (4) if the claimant does not have
> a conclusively disabling impairment, whether he can perform his past relevant
> work; and (5) whether the claimant is capable of performing any work in the
> national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*,

227 F.3d 863, 868 (7th Cir. 2000).

**D.      Analysis**

Plaintiff argues that the ALJ erred in finding that he was not disabled. Specifically,

Plaintiff argues that the ALJ ignored his hand limitations, improperly attacked his credibility, and improperly weighed medical opinions.

**(1)     The Prior ALJ's Decision Does Not Impose a Presumption of Non-Disability**

The Commissioner begins the response brief by identifying a "key factor" that Plaintiff apparently overlooked: that the ALJ declared the prior decision "final and binding under the doctrine of res judicata." (Def.'s Resp. at 5.) She then points out that "[t]his would, effectively, require [Plaintiff] to argue that his condition significantly worsened from the date of the prior ALJ decision." *Id.* at 6. The Ninth Circuit accepts this logic and imposes a presumption of continuing non-disability that a plaintiff must overcome. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). A plaintiff can do this by showing a significant worsening of her condition. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Our Circuit, on the other hand, takes a simpler approach: "The first ALJ's finding was a binding determination . . . for that time period. It has no effect, however, on an application . . . for a subsequent time period." *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996). Thus, this Court will not create a new burden for Plaintiff to overcome.

**(2)     The ALJ Improperly Ignored Evidence of Plaintiff's Hand Limitations**

Plaintiff testified that he experienced numbness in both hands due to neck issues. (R. at 53.) Dr. Strawsburg, a treating physician, noted "numbness in hands [that] may worsen during daytime." (R. at 338.) Indeed, he prescribed carpal tunnel splints to help with the numbness, which, according to Plaintiff, helps at night but not during the day. (R. at 53.) Dr. Favor, another treating physician, opined that Plaintiff had significant hand and finger limitations. (R. at 522.)

He also opined that "[d]ue to numbness and tingling in both hands gross manipulation and fine manipulation is limited. (R. at 514.) The ALJ mentioned none of this. *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("[An ALJ] may not ignore entire lines of evidence.").

The Commissioner admits that "this would normally be a difficult point to defend" but nonetheless argues that the record does not "appear to preclude occasional manipulative activities. (Def.'s Resp. at 8.) The Commissioner then notes the vocational expert ("VE") testified that Plaintiff could perform a job that required only "[o]ccasional handling of . . . sample parts." (R. at 82.) Tying it all together, she suggests that if the jobs that the VE identified required only occasional manipulative abilities, then Plaintiff would be able to perform them if he were capable of occasional manipulative activities or if he could occasionally handle sample parts. (Def.'s Resp. at 8–9.) But therein lies the problem: "if." The ALJ never analyzed Plaintiff's manipulative abilities. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[T]he ALJ did not reach the conclusion the government urges [but instead] ignored these diagnoses altogether."); *Schwabe v. Barnhart*, 338 F. Supp. 2d 941, 960 (E.D. Wis. 2004) ("[S]ignificant loss of the use of an upper extremity is a critical factor the VE must take into account.").

The Seventh Circuit faced a similar situation in *McKinzey v. Astrue*, 641 F.3d 884 (7th Cir. 2011). There, a doctor opined that the plaintiff had significant hand limitations, but the ALJ failed to explain the weight she gave the opinion. *Id.* at 891. However, this doctor did not examine the plaintiff and reviewed an incomplete record. *Id.* at 892. Furthermore, a treating physician later opined that the plaintiff's hands were fine. *Id.* The court thus found that the error was harmless because, on the basis of those facts, no reasonable ALJ would have incorporated significant hand limitations. *Id.* Here, however, the hand limitations came from two treating physicians. (R. at 341, 514). The ALJ did not weigh the first physician's opinion, and while he

did weigh the second, he never discussed the hand limitations when doing so. (R. at 27–28). A reasonable ALJ could thus conclude that Plaintiff is incapable of occasional manipulative activities. Therefore, this error is not harmless.

**(3)    The ALJ's Credibility Analysis is Patently Wrong**

Although an ALJ need not take plaintiff's alleged limitations at face value, she cannot dismiss them solely because the record lacks objective evidence to support them. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). She may still consider the lack of objective medical evidence, but she should also consider the plaintiff's "daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Id.* However, while an ALJ's credibility determination that is "supported by substantial and convincing evidence" is entitled to deference, *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007), a determination that is "material[ly] affected" by "logical errors" is subject to remand. *Scrogham v. Colvin,* 765 F.3d 685, 700 (7th Cir. 2014). Here, the ALJ relied heavily on Plaintiff's daily activities to attack his credibility, but, by ignoring the limited extent to which he performed those activities, the ALJ supported his analysis with logical errors rather than substantial and convincing evidence.

(a)    *The ALJ Mischaracterized Plaintiff's Degree Program*

Plaintiff attempted to earn a degree in computer science. (R. at 57.) The ALJ used this to doubt Plaintiff's pain allegations, noting that he "attended classes at Ivy Tech." (R. at 28.) However, Plaintiff only took online courses, and, when it came time to attend classes on campus, he dropped out instead. (R. at 57.) Thus, whether he truly "attended" classes is debatable, but

even if the ALJ meant that Plaintiff attended online classes, this is not enough to discount

Plaintiff's pain. In *Voigt v. Colvin*, for instance, the ALJ discounted the plaintiff's severe back

pain by noting that he did computer research and played video games "for hours." 781 F.3d 871,

878 (7th Cir. 2015). The court, unsatisfied with this analysis, demanded to know "the precise

nature of the pain, how comfortable the chair he sits on while using the computer is, and what his

alternatives are." *Id*. Here, the ALJ's analysis is similarly devoid of necessary information.

Moreover, Plaintiff testified that he did not attend live classes, in part, because he could only sit

for 45 minutes at a time. (R. at 57.) The ALJ said he could sit for an hour at a time. (R. at 25.)

That Plaintiff took online classes does not resolve this conflict in the ALJ's favor.


(b)      *The ALJ Selectively Evaluated Plaintiff's Functional Report*

The ALJ cherry-picked Plaintiff's functional report. First, the ALJ noted that Plaintiff

"got outside every day." (R. at 28.) Actually, Plaintiff said that he only went out during good

weather, and even then, he only makes it to the porch. (R. at 244.) He does not do any outside

chores. (R. at 62.) *See also Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008) ("Craft's so-called

'daily walk' was merely to the mailbox at the end of the driveway."). Furthermore, he apparently

only goes outside because of a Vitamin D deficiency. (R. at 263.) Similarly, the ALJ indicated

that Plaintiff "could walk." (R. at 28.) Yes, Plaintiff can put one foot in front of the other—for

one block, after which he needs a fifteen-minute break. (R. at 246.) This hardly goes against

Plaintiff's pain allegations. *Cf. Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2015) (faulting the

ALJ for ignoring evidence that the plaintiff "could not walk a single block"). Lastly, the ALJ

pointed out that Plaintiff could both drive and ride in a car. (R. at 28.) But Plaintiff never claimed

to drive the Indianapolis 500. Rather, Plaintiff testified that he drove "very rarely," usually to

doctor's appointments "if nobody is around." (R. at 51.)

An ALJ may show inconsistencies with disabling pain by identifying daily activities that the plaintiff should not be able to do with that much pain, but the ALJ cannot simply list minor activities and assume that the inconsistencies go without saying. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Here, the ALJ not only failed to explain the inconsistencies between Plaintiff's allegations and his activities, but he also inflated Plaintiff's activities. *See Craft*, 539 F.3d at 680 ("The ALJ ignored Craft's qualifications as to *how* he carried out those activities.") (emphasis in original). The ALJ must fix this on remand.

(c)     *The Commissioner Cannot Rely on the Prior Decision's Findings*

The Commissioner attempts to bolster the ALJ's credibility analysis by pointing to factors that the prior ALJ considered. (Def.'s Resp. at 6.) However, the ALJ only mentioned the prior decision in terms of whether to reopen it. (R. at 20.) He never indicated that he considered it during his credibility analysis. Whether the prior ALJ's findings would have saved the current ALJ's credibility analysis, therefore, is irrelevant. *Browning v. Colvin*, 766 F.3d 702, 703 (7th Cir. 2014) (noting that the Commissioner cannot defend a decision by citing evidence that the ALJ failed to mention).

**(4)     The ALJ Properly Discounted Plaintiff's Depression**

Plaintiff alleged depression, which the ALJ accepted, but only as a non-severe impairment. (R. at 23.) He primarily relied on the opinion of Dr. Rini, a consultative examiner to whom he gave "great weight." (R. at 28.) Plaintiff does not dispute this weight, but, rather, argues that the ALJ misinterpreted the doctor's findings. (R. at 21.) He cites *O'Connor-Spinner*

*v. Colvin*, in which the court questioned how an ALJ could possibly find "major depression, recurrent, *severe*," to be non-severe. 832 F.3d 690, 697 (7th Cir. 2016) (emphasis in original). There, the ALJ relied on two non-examining physicians. *Id.* Here, however, Dr. Rini, who did examine Plaintiff, diagnosed Plaintiff with major depression, recurrent, *in partial remission*. (R. at 420.) Moreover, he told Dr. Rini that he had begun taking Elavil in 2013, which "helps him feel emotionally stable." (R. at 419.) *See also Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007) (holding that an ALJ need not consider symptoms that "are largely controlled with proper medication and treatment"). In addition, the ALJ noted the lack of mental-health counseling. The ALJ thus reasonably concluded that Plaintiff's depression was not severe, at least prior to his DLI.

Even if the ALJ erred, however, step two is merely a screening device for frivolous claims: so long as the ALJ finds at least one severe impairment, she must continue to step three. *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015). Any error in classifying an impairment as non-severe is therefore harmless unless the ALJ found no severe impairments or failed to consider all impairments in her residual functional capacity ("RFC") analysis. *Id.* at 649. Here, Plaintiff notes that "the ALJ fails to make any provision for [Plaintiff's] psychological conditions," but does not mention any such limitation that the ALJ should have included. *Cf. Adams v.* Astrue, 880 F. Supp. 2d 895, 911 (N.D. Ill. 2012) ("a remand for this reason alone would be futile as the ALJ would likely come to the same RFC determination"). Therefore, at worst, the ALJ committed harmless error.

**(5)    The ALJ Properly Discounted Dr. Favor's Opinions**

Dr. Favor provided two medical opinions that identified significant limitations. (R. at

429–30, 520–23.) The ALJ assigned these opinions "little evidentiary weight" because they did not align with Dr. Favor's treatment notes. Normally, an ALJ must afford a treating physician's opinion controlling weight unless the record lacks medical findings to support the opinion or if it is inconsistent with "substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). But an ALJ may discount a treating physician's opinion if his own treatment notes contradict the opinion, so long as the ALJ "minimally articulated" why she discounted the opinion. *Schreiber v. Colvin*, 519 Fed. Appx. 951, 958 (7th Cir. 2013).

Here, the ALJ noted that Dr. Favor was inconsistent with himself. For instance, the doctor opined that Plaintiff could both never climb stairs and occasionally climb stairs. (R. at 28.) More importantly, the ALJ pointed out that Plaintiff usually went to the doctor only for medication refills. (R. at 27.) According to Dr. Favor's progress notes, he saw Plaintiff fourteen times in between his alleged onset date and his DLI. (R. at 451–87.) The doctor never marked anything in the "Review of Symptoms" sections, and only nine of the visits involved Plaintiff complaining of symptoms. *Id.* In fact, in one visit, he did not even take Plaintiff's vital signs. (R. at 460.) The ALJ was correct when he said that Dr. Favor's opinions "are not supported by the longitudinal treatment history of" the doctor, at least prior to the DLI. (R. at 27.)

## E.      Conclusion

The ALJ ignored evidence of Plaintiff's hand limitations and materially supported his credibility analysis with logical errors. Accordingly, this Court remands the ALJ's decision.

SO ORDERED on August 13, 2018.

S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE